1

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

TELEDYNE TECHNOLOGIES          )
INCORPORATED, a Delaware       )
corporation,                   )
                               )
          Plaintiff,           )
                               )
     v.                        )  No. 15 CV 01392
                               )
RAJ SHEKAR,                    )  Chicago, Illinois
                               )  July 9, 2015
          Defendant.           )  2:45 p.m.

                   TRANSCRIPT OF PROCEEDINGS

              BEFORE THE HONORABLE RONALD A. GUZMAN

APPEARANCES:

For the Plaintiff:        WINSTON & STRAWN, LLP
                          BY:  MS. AVIVA GRUMET-MORRIS
                          35 West Wacker Drive
                          Chicago, Illinois 60601
                          (312) 558-5600
                          agmorris@winston.com

For the Defendant:        LAW OFFICES Of JAMES A. McGURK,
                          P.C.
                          BY:  MR. JAMES A. McGurk
                          10 South LaSalle Street
                          Suite 3300
                          Chicago, Illinois 60603
                          (312) 236-8900
                          jamcgurk@flash.net

Court Reporter:           Judith A. Walsh, CSR, RDR, CRR
                          Official Court Reporter
                          219 South Dearborn Street, Room 1944
                          Chicago, Illinois 60604
                          (312) 702-8865
                          judith_walsh@ilnd.uscourts.gov
```

1       (Proceedings heard in open court:)
2              THE CLERK:  15 C 1392, Teledyne Technologies,
3   Incorporated, versus Shekar.
4              MS. GRUMET-MORRIS:  Good afternoon, your Honor.
5   Aviva Grumet-Morris for the plaintiff.
6              MR. McGURK:  Good afternoon, your Honor.  James
7   McGurk on behalf of the defendant, Raj Shekar.
8              THE COURT:  Good afternoon.  Let me ask you this,
9   counsel.  Do you have any basis upon which to believe, have
10  you spoken to any expert or are you yourself sufficiently
11  knowledgeable to believe that an examination of the computer
12  itself would be any more beneficial to your client than an
13  examination of the snapshot of the computer hard drive that is
14  available?
15             MR. McGURK:  If I can suggest, your Honor, there is
16  one substantial issue in the case.  The Court has relied upon
17  the finding of -- the testimony of the defense -- or the
18  plaintiff's expert that there was downloading from the
19  computer after the termination date of February -- between
20  February 3rd and February 17th.
21             THE COURT:  I believe that the testimony was that the
22  hard drives were connected to the computer.  I'm not sure that
23  there was testimony that there was actual downloading.  The
24  testimony that I recall -- and there may have been testimony
25  to downloading, but the testimony I recall is that three hard

1  drives were connected to the computer during that time period
2  and that those hard drives were identified by their serial
3  numbers.
4           MS. GRUMET-MORRIS:  That's correct.
5           THE COURT:  And I have relied upon that, you're
6  correct.
7           MR. McGURK:  I believe my -- again, your Honor, I
8  have the transcript rather than go through the detail.  I do
9  believe that there was an issue in terms of transfer or
10 communications between the Teledyne servers and this -- the
11 laptop.
12          MS. GRUMET-MORRIS:  I think what counsel's referring
13 to is there was testimony by Mr. Roffman that he had seen the
14 logs from Teledyne that on February 3rd, which was the date of
15 the defendant's termination, that there was a transfer of data
16 from -- there was a transfer of data between Teledyne's
17 servers and his work computer.
18          THE COURT:  Okay.  That also is true.
19          MR. McGURK:  So the issue is, once the -- I believe
20 it's referred to as a VPN device is disabled, is this
21 possible.  And there are aspects of terms, the physical
22 aspects of the computer, not just the image of the computer
23 that I believe are significant.
24          I will not represent that I have detailed expert
25 testimony because, of course, we have not seen the computer.

1  And that's -- I can just simply advise the Court as a
2  secondary matter, I have communicated with the -- I believe
3  his position is the regional counsel for the FBI office here
4  in Chicago who is responsible for the response, if you will,
5  under the Touhy regulations of the department of regulations
6  for producing these.
7           And it is, as explained to me both by the chief of
8  the civil division here in the U.S. Attorney's office and by
9  the -- I believe it's division counsel of the FBI,
10 Mr. D. J. Rossini, that this is done literally on a
11 case-by-case basis in terms of the factual issues.
12          So the -- we are certainly being, I would modestly
13 suggest, being as diligent as we can be in terms of pursuing
14 this.  And we believe that we have a good faith basis in order
15 to do this.
16          THE COURT:  Well, but that doesn't really go to the
17 issue that I'm looking at which is a little bit narrower.  I'm
18 not at this point, frankly, interested in investigating
19 whether the order to produce the three hard drives has a valid
20 basis which is what you're going to.
21          I assume your argument is going to be if there wasn't
22 any transfer, then there's no need for any of this.  But we're
23 beyond that.
24          I ordered this man to produce the three hard drives.
25 He hasn't done it.  Last time you were here, you told me he's

1  telling you that these things don't exist.  And I gave you
2  leave to investigate with an expert whether indeed there is
3  evidence that there were three hard drives attached to this
4  computer.  And that's what I'm asking you now.
5       Have you spoken to any expert, have you any reason to
6  believe that by looking at the snapshot of the same, I might
7  add, image of the computer hard drive that you cannot get the
8  information you need for that purpose, not --
9       MR. McGURK:  I can --
10      THE COURT:  -- for purposes of determining whether or
11 not there was a transfer of information from the Teledyne
12 servers to the laptop but whether there were three devices of
13 these serial numbers attached to that laptop.
14      MR. McGURK:  That is precisely the issue that
15 Mr. Kendall Dugger, who I believe we described as having been
16 retained when we went over to the FTI consultants offices.  We
17 were on the phone yesterday, Mr. Dugger and myself.
18      I have not had a chance to go through this in detail
19 with counsel for the plaintiff, but he had raised with me an
20 issue saying this ability to -- as testified to by
21 Mr. Roffman, he raised doubts about that.
22      THE COURT:  Who raised doubts about that?
23      MR. McGURK:  Pardon me?
24      THE COURT:  Who raised --
25      MR. McGURK:  Mr. Dugger of Law Computing, Inc.  And

1 the issue of terms of being -- of getting an answer to that is
2 one of the reasons -- and I don't want to represent that we
3 have expert testimony resulting from an examination yet but
4 raised issues as to the ability, there -- I don't believe that
5 there are -- the ability of Mr. Roffman or of FTI to both
6 identify the date, time, sequence, and serial numbers because
7 we -- as I understand it, there's only one serial number that
8 was identified by Mr. Roffman, from my recollection, that
9 there are three connections but only one serial number from
10 the testimony of Mr. Roffman.  That's my recollection of the
11 review of that.
12          MS. GRUMET-MORRIS:  Your Honor, there -- Mr. Roffman
13 only identified one serial number in his testimony, but he
14 certainly has the other two serial numbers.
15          The critical point for this hearing having to do with
16 the Seagate device, the reason that serial number was so
17 critical is that defendant turned in a Seagate device that
18 looked identical to the one that he had been reimbursed for
19 and was telling Teledyne via his counsel that this was the
20 same Seagate device that he had been reimbursed for and, in
21 fact, because of the two different serial numbers, we knew
22 that that was not the case as your Honor heard.
23          THE COURT:  Look, you get me a statement from an
24 expert that says that in order to determine whether, in fact,
25 the testimony that I have before me under oath by an expert

1   that three external devices, hard drives, were connected to
2   this computer during the relevant time period.  And in order
3   to contest that, he would need to look at the computer itself,
4   and the image alone would not be sufficient.
5          I will reopen the hearing on that issue, but I have
6   to tell you one more time, without that, it's not going to
7   happen and I'm -- I have run out of patience with your client.
8          If you can get that, do it.  Otherwise, I'm moving
9   forward, and I'm going to do what I need to do to make sure
10   that he gives us those three devices which as of right now, I
11   am firmly and completely convinced exist and were, in fact,
12   attached to his computer.
13          MR. McGURK:  Your Honor, does this entail -- include
14   the issues that we raised that after the computer was disabled
15   that it would not be possible for Mr. Shekar to have been able
16   to connect anything?
17          THE COURT:  It's a very narrow question, and that is,
18   the expert that you contact would need to be able to tell you,
19   "I cannot tell simply from looking at the computer image
20   whether those devices were connected on those days or not.  I
21   would need to see the actual computer."
22          If you don't have that, as far as I'm concerned,
23   whatever else you have is just not relevant to my inquiry
24   right now.  If the evidence remains unrebutted that he
25   attached these three external devices to his computer during

1   the relevant time period, he is going to go to jail until he
2   comes up with those three external devices, period.
3           By all means, he should be in jail right now because
4   he's had his opportunity already to contest that issue.  We
5   had a full hearing.  But because you are new counsel in the
6   case and you have indicated to me that your client is adamant
7   in his representations to you that that actually did not
8   happen, I am giving you an opportunity to provide me some
9   basis other than your client's say-so for me to reopen that
10  issue.
11          It's just that straightforward and simple.  I know
12  that your client would like to make it more complicated.  He
13  loves to make things complicated.  But this is very simple,
14  very straightforward.  If you can get that kind of a statement
15  from a bona fide expert, I'll reopen the hearing.
16          MR. McGURK:  Your Honor, in terms of time, right now
17  the order provides us, I believe, next --
18          MS. GRUMET-MORRIS:  Monday.
19          MR. McGURK:  -- next Monday.  I mean, we're --
20          THE COURT:  How much time do you need?  You already
21  are in contact with an expert.  Ask him that question.
22          MR. McGURK:  I will, your Honor, but in terms of
23  being able to make sure -- I don't want to exceed --
24  basically, can I have another week beyond that?  Can I have
25  until the 20th?

1  THE COURT: All right. Carole, can we do this on the
2  20th?
3  MR. McGURK: There's also a date that was set by your
4  Honor of January 17th.
5  MS. GRUMET-MORRIS: July.
6  MR. McGURK: I'm sorry. July 17th.
7  THE COURT: What are we doing on the 20th?
8  THE CLERK: We're on trial next week, and that's the
9  Monday after, that we might still be on trial, Judge.
10  THE COURT: Better make it towards the end of that
11  week.
12  THE CLERK: The end of the week of the 20th.
13  MS. GRUMET-MORRIS: Your Honor, if I may, I think
14  counsel was asking until the 20th to produce a report or a
15  statement. So I don't know that --
16  MR. McGURK: At least to respond to this question.
17  THE COURT: Okay. We'll continue this for a hearing
18  the end of the week of the 20th, Carole.
19  THE CLERK: Yes, sir. Let's see. The 23rd at 2:00.
20  THE COURT: Okay. Report no more than one day before
21  that. On the 23rd, your client needs to be here. That's an
22  order.
23  THE CLERK: Report by the 22nd.
24  MR. McGURK: Thank you, your Honor.
25  MS. GRUMET-MORRIS: Your Honor, one question. If

1    counsel by the 22nd produces his report, I'm not sure if I'll
2    have time to make sure that Mr. Roffman is --
3             THE COURT:  We'll cross that bridge when we get to
4    it.
5             MS. GRUMET-MORRIS:  Okay.
6             MR. McGURK:  Thank you, your Honor.
7             MS. GRUMET-MORRIS:  Thank you.
8             THE CLERK:  Judge, excuse me.
9             THE COURT:  What's the problem?
10            THE CLERK:  There is a status hearing set that was
11   mentioned, the 17th.  Should we strike that?
12            THE COURT:  That's stricken.  We'll strike that.
13            MR. McGURK:  Thank you very much, your Honor.
14            MS. GRUMET-MORRIS:  Thank you, your Honor.
15            THE CLERK:  Court stands recessed.
16       (Proceedings adjourned at 3:05 p.m.)
17
18
19
20
21
22
23
24
25

```
 1                        C E R T I F I C A T E
 2            I, Judith A. Walsh, do hereby certify that the
 3    foregoing is a complete, true, and accurate transcript of the
 4    proceedings had in the above-entitled case before the
 5    Honorable RONALD A. GUZMAN, one of the judges of said Court,
 6    at Chicago, Illinois, on July 9, 2015.
 7
 8    /s/ Judith A. Walsh, CSR, RDR, CRR          July 13, 2015
 9    Official Court Reporter
10    United States District Court
11    Northern District of Illinois
12    Eastern Division
```