# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TELEDYNE TECHNOLOGIES INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | No. 15-cv-1392 |
| v. | ) ) | Judge Ronald A. Guzmán |
| RAJ SHEKAR, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The Court finds that Raj Shekar has failed to purge himself of contempt for the repeated refusal to comply with this Court's orders. The Court accordingly enters judgment against him, dismisses his counterclaims, and directs him to pay Teledyne's reasonable attorney's fees and costs incurred as a result of having to pursue relief for Shekar's persistent contemptuous behavior. In addition to the usual bill of costs, Teledyne is directed to submit, within 30 days of the date of entry of this order, an accounting of its costs and attorney's fees related to litigating the contempt issues in this matter. Civil case terminated.

## STATEMENT

Currently before the Court are the parties' position papers as to whether Raj Shekar has purged himself of contempt as detailed in an order issued by this Court on June 17, 2015. For the reasons stated below, the Court finds that Shekar has not, and imposes the sanctions set forth herein.

The Court assumes familiarity with the facts of this case and this Court's prior orders, and generally summarizes the relevant history. Plaintiff Teledyne Technologies, Inc.

("Teledyne") brought suit against its former employee Shekar, seeking injunctive relief relating to the return of Teledyne property and confidential information following Shekar's termination. (Compl., Dkt. # 1.) The Court issued a temporary restraining order ("TRO") on February 17, 2015, finding that Teledyne established a substantial likelihood of success with respect to its claims that Shekar, without authorization and in violation of his contractual obligations, misappropriated confidential information and trade secrets from Teledyne; intentionally deleted Teledyne computer files; engaged in deceptive trade practices; interfered with its business relationships; and converted its property, all of which threatened to cause irreparable harm to Teledyne. (TRO, Dkt. # 16.) On March 10, 2015, the TRO was replaced with a preliminary injunction ("PI"). (PI, Dkt. # 62.) On March 17, 2015, Teledyne filed a Motion for Rule to Show Cause why Shekar should not be held in contempt for failing to comply with the TRO and PI. (Mot. Rule Show Cause, Dkt. # 71.)

The motion was granted and a rule issued, and the Court held an evidentiary hearing on April 30, 2015 and May 6, 2015. Following post-hearing briefing, the Court issued an order dated June 17, 2015 (Dkt. # 113), in which it found Shekar in contempt for violating the TRO and PI.[1] The order required Shekar to purge himself of contempt by doing the following on or before July 1, 2015, or face further sanctions: (1) produce his home computer and any other devices or electronic storage media accessible to him; (2) produce at a minimum the three external hard drives connected to the Teledyne laptop on or after his termination date, and either

---

[1] In its order, the Court found implausible Shekar's assertions that, among other things, he did not have a Seagate hard drive with the serial number NA7J5C1K, and that "Teledyne with the help of FBI, might have scrambled the serial number to make it look different" or might have purchased and plugged in the NA7J5C1K to frame him. (6/17/15 Order, Dkt. # 113, at 16-17.) Since then, Shekar has conceded having possession of the Seagate hard drive with serial number NA7J5C1K, and he has never satisfactorily explained why he represented that the Seagate hard drive did not exist when he knew he had it in his possession.

2

produce or account for the whereabouts of the other eight hard drives or other devices which have connected to the laptop since July 13, 2013; (3) truthfully and completely answer all interrogatories served upon him in this matter under oath; (4) turn over, without keeping any copies, all Teledyne information including emails and the November 2014 backup files; (5) explain the nature of the February 3, 2015 data transfer between Teledyne's servers and his work laptop, and turn over any such data still accessible to him; and (6) truthfully divulge the passcode required to access the Teledyne iPhone he previously produced. (*Id.* at 28.)

Thereafter, Shekar engaged in a series of evasions and misrepresentations seeking to vacate or modify the order that he purge himself of contempt. He filed several unsuccessful emergency motions, including one on July 30, 2015, requesting that the Court lift its order directing him to produce two Western Digital external hard drives and to re-open the evidentiary hearing. (Dkt. # 148.) In essence, Shekar's emergency motion claimed that the two Western Digital hard drives he had been ordered to turn over on the basis of Teledyne's expert testimony did not even exist. Upon further investigation, Shekar's representations, based upon his self-serving faulty interpretation of information from a public internet site, were found to be meritless. (10/13/15 Order, Dkt. # 187, at 3-4.)

In some of his filings before this Court and the Court of Appeals for the Seventh Circuit, Shekar made offensive personal attacks on opposing counsel, and threatened to go to the police with accusations of criminal conduct by witnesses against him. (*See, e.g.*, Dkt. 160, ¶ 11 ("Even though plaintiff is not mandated or required to file anything, but like the vindictive law suit with no merits, and spit more venom on Mr. Shekar, plaintiff filed a 'Statement' with distorted facts and with a vicious, evil intent to see whether more harm could be inflicted to Shekar and to derive a sadist pleasure from that harm. Just like the distorted, bogus serial numbers of external

drives which was [sic] never manufactured, so Shekar could never produce and thus can cause harm to Shekar by incarceration.").) He would ultimately make similar attacks on each of the attorneys he retained and subsequently discharged. His threats were such that one discharged attorney felt it necessary to petition the court for an order of protection against Shekar both for himself and one of Shekar's former expert witnesses. (Mot. Protective Order, Dkt. # 150.)

After much motion practice and numerous baseless denials by Shekar, the Court, on October 13, 2015, found that Shekar had failed to purge himself of his contempt by not complying with the Court's June 17, 2015 order. Shekar was ordered to present himself before the Court on October 22, 2015 at 9:00 a.m. to be detained and committed to the custody of the Bureau of Prisons until such time as he fully and completely purged himself of his contempt. (10/13/15 Order, Dkt. # 187.)

Facing compulsory incarceration, Shekar's manipulations not only continued, they became more extreme. On the same day following entry of the Court's order for compulsory incarceration, this Court's courtroom deputy received telephone calls from various attorneys, including former Assistant United States Attorneys known to the Court, alerting it that Shekar had contacted them to retain their services (ultimately all refused to represent him). ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ (10/13/15 Minute Entry, Dkt. # 188.) On

that date, the Court, with the consent of counsel for both sides, initiated a settlement conference, which was unsuccessful.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ The Court made several attempts to obtain verification of this assertion, but Shekar -- while still represented by prior counsel -- insisted that any such proof would have to be provided *in camera* and *ex parte*, for the Court's eyes only. ██████████████████████████████████

████████████████████████████████████████ But, more to the point, because Shekar had previously filed documents of questionable authenticity and made outlandish accusations and representations, the Court determined that the genuineness of any such proof would need to be verified. This task is essentially an investigatory one, which is more properly performed by opposing counsel, not the Court. The Court thus granted Shekar's request in part by ordering that any documentary support for the purported treatment be filed under seal and produced for opposing counsel's eyes only – not to be shared with clients or anyone else. Nevertheless, Shekar has refused to turn over the papers he claims will meet the Court's requirements in order to continue the Court's stay of the compulsory incarceration order.

Shekar further insists that he is no longer subject to sanctions because he has fully complied with the preliminary injunction order. Since being found in contempt, Shekar has produced what he contends is his home computer, a "personal" cell phone, an unused Seagate external hard drive, and a Seagate external hard drive with the serial number of NA7J5C1K. However, even with this supposed compliance, Shekar continues to defy the Court's authority. The "home computer" Shekar produced was a laptop containing a non-original hard drive that was secured to the computer with tape.[2] Moreover, the purported personal phone that Shekar produced had only four calls in the call log, all of which occurred between June 29, 2015 (the date Shekar first agreed to produce his personal cell phone) and July 1, 2015 (the date Shekar actually produced the cell phone). The Seagate hard drive with the serial number NA7J5C1K was previously determined to have files that were accessed by Shekar after his employment with Teledyne was terminated, but an examination of the hard drive after it was produced revealed signs that the drive had been wiped. In addition, Shekar has:

1.) failed to produce any other devices or electronic storage media accessible to him (*e.g.*, the two Western Digital hard drives);[3]

2.) produced only one of the eight USB drives connected to the Teledyne laptop during his employment;

---

[2] Shekar maintains that the device with the non-original taped-on hard drive is his personal computer, and contains no information relevant to this case, but provides no further explanation. The Court finds it hard to believe that this is the personal computer of a marketing/sales management employee for an advanced technology company who uses computers extensively in his work, and owns multiple hard drives and flash drives. Instead, it appears to the Court that Shekar has removed the original hard drive from this computer and replaced it with a non-original hard drive which he has secured to the computer with tape.

[3] In a prior affidavit, which he incorporates in his latest position paper, Shekar claims that one of the Western Digital hard drives was lost in August of 2013 and the other he never received nor possessed. However, the forensic analysis revealed that the two Western Digital hard drives and a Seagate hard drive were connected to his Teledyne computer on or after February 2015.

3.) not allowed Teledyne access to the email accounts he controls, as required by the preliminary injunction;

4.) failed to truthfully and completely answer all interrogatories under oath. in spite of having previously provided two versions of his verified interrogatory answers, he still has not been truthful or complete in his answers in the following respects:
(i) he fails to acknowledge or identify the two Western Digital hard drives that analysis has shown he connected to his Teledyne laptop;
(ii) in his interrogatory answer he continues to refuse to acknowledge the Seagate external hard drive with serial number NA7J5C1K, even though he has since been produced it (albeit with missing files);
(iii) fails to identify seven of the eight USB drives that were connected to his Teledyne issued computer during his Teledyne employment;

5.) failed to turn over, without keeping any copies, all Teledyne information including emails and the November 2014 back up files; and

6.) failed to explain the nature of the February 3, 2015 data transfer between Teledyne's servers and Shekar's work laptop, and turn over any such data still accessible to him.

In addition to these specific instances of contempt, Shekar was ordered to pay all of Teledyne's "reasonable attorney's fees and costs incurred in the preparation and prosecution of its motion for a rule to show cause and its post-hearing briefs." (6/17/15 Order, Dkt. # 113, at 28.) Those fees and costs have continued to increase since the Court issued the order due to the various issues Shekar continues to raise, and to which Teledyne was forced to respond. (*See, e.g.,* 9/2/15 Tr. at 9:8-15.) Teledyne does not include an accounting of those fees and costs in its most recent filing given the Court's prior direction that it would hold this issue in abeyance until resolution of the other failures of compliance. (*Id.* at 9:3-4.)

The ability to punish disobedience of judicial orders is "essential to ensuring that the Judiciary has a means to vindicate its own authority." *Young v. U.S. ex. rel. Vuitton et Fils S. A.,* 481 U.S. 787, 796 (1987). To support a federal civil contempt order, it must be proven by clear and convincing evidence that (1) the court entered a lawful order of reasonable specificity

and (2) the order was violated. *See Matter of Betts*, 927 F.2d 983, 986 (7th Cir. 1991). The terms of an injunction qualify as such an order, and a court's civil contempt power may therefore be employed to enforce them. *See SEC v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008) (noting that "the court whose order was defied must enforce the injunction through the contempt power because contempt is, in essence, an affront to the court that issues the order"). A finding of willfulness is not required to hold a party in civil contempt; all that must be shown is that a party has not been reasonably diligent in attempting to accomplish what was ordered. *SEC v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007).

Shekar is clearly in willful contempt. He has been ordered time and again to comply with the Court's orders and has never manifested the slightest intention to do so. Worse still, he has attempted to deceive the Court at every step of the way. Both before being found in contempt and afterwards, he has displayed a total lack of respect for the truth or the integrity of the legal process. When the Court threatened fines and attorney's fees, Shekar remained unwavering in his contemptuous behavior. When the Court threatened compulsory imprisonment, Shekar took advantage of the Court's concern for his well-being – all the while continuing his contemptuous refusal to comply. The Court has paid a high price in the expenditure of time and resources in dealing with Shekar's persistent misconduct as has the plaintiff. The record is clear that ordinary sanctions have been and will continue to be unavailing, and Shekar leaves the Court with no choice but to impose harsh sanctions, which are not only appropriate, but required.

For the reasons stated above, the Court enters judgment against Shekar on all of Teledyne's claims, dismisses his counterclaims, and, in addition to the usual bill of costs, assesses Shekar Teledyne's reasonable attorney's fees and costs stemming from its arduous efforts in demonstrating Shekar's contempt. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)

8

(affirming district court's outright dismissal of a lawsuit and shifting of attorney's fees for the litigant's fraudulent behavior persistent harassment of parties and nonparties); *Connolly v. J.T. Ventures*, 851 F.2d 930 (7th Cir. 1988) (explaining that district courts have broad authority to determine the severity of contempt sanctions based on the severity of harm and the probability that alternative sanctions would be ineffective); *Shakman v. Democratic Org. of Cook Cty.*, 533 F.2d 344, 351 (7th Cir. 1976) ("An award of costs and attorney fees in civil contempt is clearly proper"); *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63 (1st Cir. 2002) (finding that the district court did not abuse its discretion for imposing a $4,600,000 contempt sanction for vexatious and duplicitous litigation behavior); *SD Protection, Inc. v. Del Rio*, 587 F. Supp.2d 429 (E.D.N.Y. 2008) (entering judgment against contemnor for repeated failure to comply with the court's order).

**Date:** August 22, 2016

Ronald A. Guzmán
**Ronald A. Guzmán**
**United States District Judge**